[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR CONTEMPT, DEFENDANT'S MOTION FOR MODIFICATION AND PLAINTIFF'S REQUEST FOR COUNSEL FEES
There are three issues before the court in this proceeding: the plaintiff's Motion for Contempt, the defendant's Motion for Modification and the plaintiff's Request for Counsel Fees. The court grants the plaintiff's Motion for Contempt, grants the defendant's Motion for Modification and grants in part the plaintiff's Request for Counsel Fees.
A decree of dissolution of the parties' marriage was entered on January 19, 1999, after a marriage of five months shy of thirty-one years. At the time of the decree, the defendant was employed as a graphic designer, which position he had held since prior to the parties marriage. He had attended college majoring in psychology and minoring in art. He completed all but 30 credits toward his bachelor's degree. It was at that point that he began working as a graphic designer. His annual income at the time of the decree was $50,000. The plaintiff at that time was employed as a secretary at Rehabilitation Associates earning $22,800 per year.
Prior to the entry of the decree of dissolution, the parties entered into a separation agreement. That agreement is dated January 19, 1999, and is contained in the file. Article IV of that agreement provided that the defendant shall pay to the plaintiff the sum of $200 per week "as alimony until the plaintiff's remarriage, death or cohabitation described in the Connecticut General Statutes." The agreement further provided that any and all income generated by the Fidelity IRA and Putnam IRA accounts shall not be considered as income for purposes of modifying any alimony. The agreement further provided in Article V that the defendant "shall maintain his present life insurance of no less than $100,000.00 naming the wife as beneficiary for so long as he has an alimony obligation." This provision of the agreement further provided that the defendant "shall pay premiums of $44.24 per month on the present policy. . . ."
Article V of the agreement further provided that the defendant shall provide the plaintiff "annually with confirmation that this policy or a substitute policy, is current, upon reasonable notice." Paragraphs 5.2 and 5.3 of the agreement provide as follows:
5.2 The husband shall have the right from time to time to substitute other policies of insurance for those presently in effect; provided however, that the CT Page 4490 husband notifies the wife of such substitution and supplies the wife with the name of the insurance company, the policy number, the type of insurance and the face amount of each policy so substituted and further provided that the total death benefits with respect to said insurance is no less than the benefits which the husband is obligated to provide in accordance with this Article 5.
 5.3 The parties agree that life insurance which the husband is obligated to provide hereunder is an element of support and maintenance and may be modified by the Court accordingly.
The defendant was laid off from his employment on March 1, 2001. He was given three months' termination pay. His last salary payment was June 29, 2001. He received unemployment compensation of $400 per week for 26 weeks. The court finds that the defendant registered with five employment agencies, made fifty or more contacts, and was interviewed at least 40 times. He is seeking a job at $50,000 per year or more. At the time of his termination of employment he was earning $60,000 per year.
In April of 2001, the defendant made his last payment on the life insurance policy provided for in Article V of the parties' agreement. He stated that since his employment had been terminated and it was likely that his unemployment would continue, he would no longer be in a position to pay $44.24 per month. He also stated that he did not see any reason for his ex-wife to receive money upon his death. The defendant fails to realize that the $100,000 would be in substitution for termination of alimony payments upon his death.
The defendant stopped paying alimony on October 1, 2001. This paid for the period October 1 to October 8. At the time he stopped paying alimony he had $12,222 in savings and $738 in checking accounts in his name. (See exhibit D.) On October 31, he wrote a check to his live-in companion for $7,500 "to pay her back for what he owed her."
The difficulty in this case is that the defendant fails to understand that there were outstanding court orders. Those orders continue in full force and effect until the court enters orders modifying them at which time new orders go into effect until they are modified. On October 10th, the defendant mailed to the plaintiff a note. That note read as follows:
"I'm unable to pay alimony for a while. Lost my job and unemployment insurance has run out. Hopefully I'll be able to resume payments soon. You have my number, call CT Page 4491 me if you want to discuss. . . ." (See plaintiff's exhibit N.)
On October 11, plaintiff replied to that letter by certified mail, return receipt requested. In that letter plaintiff stated:
 "I spoke to my lawyer and she said the only way you can modify alimony is to get a change in court orders. Until this is done, you still are responsible for alimony payments." (See plaintiff's exhibit O.)
That letter states the law as I have recited it above.
Further, the alimony obligation remains as a priority obligation — that is, senior to most other obligations. In this case, the obligation is senior to the indebtedness owed to the defendant's live-in companion.
To find one in contempt the court must find an intentional and wilful violation of the court's orders. Ignorance of the legal effect of the court's orders is no excuse. Based upon the facts in this case, the court does find the defendant intentionally and wilfully failed to abide by the court's orders and therefore finds him in contempt for failure to continue paying alimony until an order of modification was entered and for failure to continue maintenance of the $100,000 life insurance policy as required by Article V of the agreement of the parties.
Unfortunately, the defendant did not seek modification in this case until December 3. Service of the motion was made on January 24, 2002. The earliest date that the court may order modification of alimony is January 24, 2002. There are 15 weeks and four days covering the period October 8, 2001, (the last date to which alimony was paid), to January 24, 2002, and at $200 per week the arrearage amounts to $3,114.
The plaintiff claims that the $100,000 life insurance policy may have had some cash value. Attached to exhibit V is a letter from Nationwide Insurance describing a whole life permanent plan policy with a schedule of cash values attached. This policy was never obtained. The policy provided for in Article V was a term policy that had no cash value. (See plaintiff's exhibit V.)
The defendant maintains that he has satisfied the life insurance requirement of Article V by naming the plaintiff as the 100% beneficiary of his IRA with Fidelity Investments which had a balance of $286,500 as of December 31, 2001. (See defendant's exhibit 4.) The fact that this more than makes up for the requirement in Article V makes no difference CT Page 4492 on the motion for contempt. He has no right to substitute an IRA for the policy required by Article V without a court order to that effect.
The court having found the defendant in contempt must now consider the steps the defendant must take to purge himself of that contempt. The court orders that the defendant shall pay the arrearage of $3,114 and must substitute at least $100,000 in value from his IRA account naming the plaintiff as first beneficiary thereof. The defendant is ordered to pay the arrearage of $3,114 to the plaintiff on or before May 1, 2002. The defendant shall conditionally assign to the plaintiff at least $100,000 of his IRA account naming the plaintiff as irrevocable beneficiary, such assignment conditioned to be paid only upon the defendant's death. In the event of the plaintiff's death before the defendant, said conditional assignment shall have no further force or effect. The assignment shall take effect only in the event of the defendant's death prior to the plaintiff's death or her remarriage. In the event of the plaintiff's remarriage prior to the defendant's death, the conditional assignment shall have no further effect. The defendant shall notify Fidelity management Trust Company at the address noted on defendant's exhibit 4 of such conditional assignment on or before May 1, 2002. A copy of his notification to Fidelity and a copy of their reply shall be furnished to plaintiff's counsel.
 MOTION FOR MODIFICATION
As previously found, the defendant is out of work. He has no income at the present time and no means to pay alimony to the plaintiff. The court grants the defendant's Motion for Modification effective January 24, 2002, and reduces the alimony from $200 per week to $1.00 per year until such time as the defendant again has employment in his chosen profession or suitable employment for one of his education and training. At such time as he has found new employment, he shall immediately notify plaintiff's attorney of the amount of his salary, the amount of his tax withholding, both federal and state, and all other deductions. Such notification shall be made within two weeks of such employment.
In considering any modification by the plaintiff, it is clear from the testimony in this proceeding that there have been numerous changes in the plaintiff's financial position such that the amount of alimony ordered in 1999 may no longer be appropriate.
 COUNSEL FEES
Plaintiff's attorney has submitted an affidavit of attorney's fees of $14,000 and $173 in costs. Section 46b-87 of the General Statutes permits the court to award reasonable attorney's fees and the fees of the officer CT Page 4493 serving the contempt citation when any person is found in contempt. The court finds that the fees of plaintiff's counsel are fair and reasonable. However, the total of her fees included plaintiff's fees in defense of the defendant's Motion for Modification. Indeed, the major portion of these fees were incurred in that defense, significantly in an attempt to discover other income of the defendant. The court finds that $5,000 plus the costs of the officer serving the contempt citation — $40.00 — is the amount that may be attributable to the Motion for Contempt.
The court orders that the defendant shall pay plaintiff's counsel the sum of $4,040 (Four Thousand Forty Dollars) on or before Tuesday, May 1, 2002, and an additional $1,000 (One Thousand Dollars) on or before July 1, 2002.
 ___________________ EDGAR W. BASSICK, III JUDGE TRIAL REFEREE